Filed 3/16/21

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICKY TYRONE FOSTER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MICHAEL SEXTON, as Warden, etc., <br><br> Defendant and Respondent. | F078387 <br><br> (Super. Ct. No. 18C-0032) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kings County. Robert Shane Burns, Judge.

Ricky Tyrone Foster, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

-ooOoo-

Plaintiff Ricky Tyrone Foster is a self-represented black inmate who alleges prison officials retaliated against him because (1) he disclosed information to the Office of Internal Affairs of the California Department of Corrections and Rehabilitation (CDCR) about prison officials covering up a murder and (2) he filed administrative grievances

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV. of the Discussion.

addressing misconduct by officials at Corcoran State Prison. The retaliation includes correctional officers restraining Foster on a gurney after he was injured in a racial incident at the prison and then allowing another prisoner to attack him. Seven of Foster's ribs were broken in the attack. While Foster was at a Visalia hospital for treatment of his injuries, Corcoran State Prison officials took custody of his personal property and, when he returned, some of that property (including legal papers) was not returned to him. The retaliation also includes, in Foster's estimation, the misconduct of prison officials that thwarted his inmate grievances seeking the return of his missing property.

Foster initiated this lawsuit by filing a petition for a writ of replevin directing prison officials to return his personal property or pay its value, which Foster estimates at $500. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 513 [inmate could pursue a petition for writ of mandate seeking the return of specific personal property or the value thereof] (*Escamilla*).)

The trial court, on its own motion for judgment on the pleadings, dismissed the lawsuit on the ground that Foster failed to allege he exhausted, or was excused from exhausting, the inmate grievance process through the third level. Foster appealed, contending he should be excused from exhausting that process because it was rendered unavailable by the misconduct of prison officials.

Foster's original petition omitted allegations about the unavailability of the inmate grievance process or any other excuse. Consequently, we consider whether he has demonstrated he could amend his petition to include allegations of unavailability sufficient to excuse him from exhausting that process. We reach this question despite Foster's failure to file a first amended petition in the trial court because the "issue of leave to amend is always open on appeal." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746; see Code Civ. Proc., § 472c.)

Under California law, the exhaustion of administrative remedies is excused when " 'the administrative remedy is inadequate or unavailable.' " (*Kaiser Foundation*

2.

*Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 101.) We conclude the prisoner grievance procedure is "unavailable" for purposes of California law "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (*Ross v. Blake* (2016) 578 U.S. __, __, [136 S.Ct. 1850, 1860] (*Ross*).) On a question of properly pleading the excuse of unavailability, we conclude Foster must allege specific facts showing how, when, where, to whom, and by what means the machinations, misrepresentations or intimidations were accomplished. As explained below, we conclude the papers Foster filed in the trial court and in this appeal demonstrate he could amend his petition to allege specific facts showing the administrative process is unavailable to him because prison officials have thwarted his use of the inmate grievance procedure through misrepresentations and machinations.

We therefore reverse the judgment of dismissal and remand for further proceedings.

## FACTS

In 1993, Foster was convicted of various serious offenses relating to a carjacking. (*People v. Foster* (1995) 34 Cal.App.4th 766, 768.) The jury found Foster used a firearm during the commission of the offenses. Foster "was sentenced to a total unstayed prison term of life with the possibility of parole plus 12 years." (*Id*. at p. 769.)

On August 6, 2017, CDCR was housing Foster in facility C of the Corcoran State Prison as a member of the general population. That day, Foster and approximately 150 other prisoners were involved in what he describes as a racial incident in the facility C recreational yard. During the incident, Foster was injured. He was placed on a gurney, handcuffed, and secured by straps. Foster states that while he was strapped to the gurney, correctional officers allowed another prisoner to attack him, which resulted in severe injuries later diagnosed as including seven broken ribs. Foster contends he was restrained on the gurney and allowed to be attacked in retaliation for filing grievances addressing

3.

prison officials' misconduct and for disclosing information to the Office of Internal Affairs about a cover up of a murder.

Foster was transported from the Corcoran State Prison to Kaweah Delta Medical Center in Visalia for treatment of his injuries. While Foster was in the hospital, prison officials took possession of his personal property, which included legal papers from two earlier civil lawsuits. Foster contends the officials did not properly store his belongings. Instead of placing the items in "Receiving & Release" property holding, the items were held in a supply room in housing unit 2 of yard 3C. Other inmates could access this room without supervision by prison officials.

On August 9, 2017, Foster was returned to Corcoran State Prison. He was placed in unit 4A of administrative segregation because of his continued demands "for [the] Excessive use of Force procedural Video." He also requested his personal property. Foster alleges prison officials sought the property with negative results and he was never given a property receipt or the opportunity to inventory his belongings. Foster was transferred from Corcoran State Prison to Calipatria State Prison sometime in late August 2017.

*Foster's Form 22*

On August 31, 2017, after his transfer to Calipatria and further unsuccessful attempts to get his property, Foster completed a "CDCR 22" (Form 22), which is an informal method to resolve inmate issues. A member of the Calipatria prison staff, O. Bello, received and signed Foster's Form 22. Entries on the form showed it was forwarded to "SHU/Ad-Seg Property Officer S. Diaz" at Corcoran State Prison by U.S. Mail. In the form, Foster asserted two pending civil lawsuits had been dismissed because of Diaz's ongoing denial of his requests for access to his legal property. Foster also asserted he submitted two requests for his legal property and each was ignored.[1]

---

[1]     On September 4, 2017, Foster delivered another Form 22 to prison officials relating to his missing personal property. Two copies of this Form 22 are contained in

4.

On September 11, 2017, Foster's first Form 22 was returned to him with "SECTION B:, STAFF RESPONSE," stating: "Your property was never sent to [administrative segregation] 4A from 3C yard [at Corcoran].  Upon your transfer [to Calpatria], your property was retrieved from 3C to be transferred with you."  (Some capitalization omitted.)  B. Resa was the responding staff member.  Foster requested a supervisor review of this response by completing the Form 22's section C on October 11, 2017.  Foster stated he disagreed with the staff response, and asserted his property should not have been held at Corcoran State Prison's 3C yard beyond August 9, 2017, when he was placed in administrative segregation.  He stated he was not given a receipt or allowed to inventory his property until September 6, 2017, when he was at Calipatria State Prison. He asserted items of property were missing, and the issue of missing property could have been cured while he was at Corcoran State Prison.  Form 22's "SECTION D:, SUPERVISOR'S REVIEW," is blank in both the copy in the clerk's transcript and the copy attached to his second supplemental appellant's brief.  We assume no supervisor review was conducted.

*Foster's First Form 602 Appeal*

On or about September 3, 2017, while his first Form 22 was being processed, Foster submitted a formal grievance using "CDCR 602" (Form 602),[2] which was mailed

the clerk's transcript but the quality of the copies is too poor to read most of the handwriting on the form.

[2]      The CDCR regulation applicable at that time stated inmates pursuing an administrative appeal "shall use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested."  (Cal. Code Regs., former tit. 15, § 3084.2, subd. (a).)  For purposes of this opinion, all further references to "Regulations" or "Regs." are to the version of title 15 of the California Code of Regulations in effect in 2017 and 2018.

An inmate submits a Form 602 to the prison's appeals coordinator to initiate the first of three levels of administrative review.  (See Regs., §§ 3084.2, subd. (c), 3084.7 [three levels of formal review].)  The Form 602 is limited to one issue or a set of related

5.

to the appeals coordinator at the Corcoran State Prison. Foster requested that his personal and legal property be located and he receive a personal inventory of his property (Form 1083). The Form 602 was assigned log number CSPC-5-17-04611 (Form 602–'611).

Foster was interviewed by telephone on September 17, 2017, by Corcoran Facility 3C Correctional Officer C. Rodriguez in response to his request for a personal interview. That interview is described below.

The "FIRST LEVEL APPEAL RESPONSE" to Form 602–'611 was dated September 17, 2017, and was signed by Rodriguez and Associate Warden B. Odle of

---

issues. (Regs., § 3084.2, subd. (a)(2).) In the space provided on the form, the inmate must "describe the specific issue and action requested." (*Ibid.*) Generally, an inmate must submit the Form 602 within 30 calendar days of the event or decision that is being appeal. (Regs., § 3084.8, subd. (b)(1).)

Prison officials screen Form 602's at each level before acceptance and assignment for review. (Regs., § 3084.5, subd. (b).) The screening process determines whether specified content and procedure requirements have been met. When an appeal is rejected or cancelled, the inmate must be notified of the specific reasons why it was not accepted for review. (Regs., §§ 3084.5, subd. (b)(3); see 3084.6 [grounds for rejection or cancellation].) When a Form 602 is accepted for review, the first level response must be returned to the inmate within 30 working days from its receipt by the appeal coordinator. (Regs., § 3084.8, subd. (c)(1).)

If the first level response is not satisfactory, the inmate may submit an appeal to the prison's appeals coordinator for a second level of review. (Regs., § 3084.7, subd. (b).) The second level appeal must be submitted within 30 calendar days of the inmate's receipt of the first level response. (Regs., § 3084.8, subd. (b)(3).) If the second level appeal is accepted, the response must be returned to the inmate within 30 working days from the appeal coordinator's receipt of the appeal. (Regs., § 3084.8, subd. (c)(2).)

An inmate dissatisfied with the second level response may appeal to the third level within 30 calendar days of receiving the response. (Regs., §§ 3084.2, subd. (d), 3084.8, subd. (b)(3).) The appeal and supporting documents must be mailed to the third level appeals chief in Sacramento. (Regs., § 3084.2. subd. (d).) Third level responses shall be completed within 60 working days from the date of the appeals chief's receipt. (Regs., § 3084.8, subd. (c)(3).) A decision at the third level of review exhausts the administrative grievance process. (Regs., § 3084.1, subd. (b).) "[A] cancellation or rejection decision does not exhaust administrative remedies." (Regs., § 3084.1, subd. (b).)

Corcoran State Prison. Their response described the issue presented by referring to the August 6, 2017, racial incident and Foster's subsequent placement in administrative segregation and stating: "You were never issued a Property Inventory Form (1083) and your property can not be located." The response also described events that occurred after Foster submitted appeal Form 602-'611 by stating (1) Foster was interviewed by telephone on September 17, 2017, in response to his request for a personal interview; (2) a property transfer receipt "lists 6 boxes of your property as being located and forwarded with you to Calipatria State Prison via North Kern State … Prison from CSP-Corcoran on September 5, 2017 via bus schedule M"; and (3) "[a]s for your request to personally inventory your property you are advised to request Calipatria State Prison to issue your personal property to accomplish that matter." The final paragraph of the first level appeal response was labeled "**DECISION**" and stated: "Your appeal is **GRANTED IN PART** at the First Level of Review. Your property was located and forwarded with you to Calipatria State Prison via North Kern State … Prison from CSP-Corcoran on September 5, 2017 via bus schedule M."

Foster appealed the first level appeal response by completing section D of Form 602–'611 and submitting it for a second level review on October 16, 2017. Foster asserted items of his personal and legal property were still missing and described specific items that had not been returned, which included tennis shoes, a watch, sunglasses, shorts, toiletries, canteen food, and orthopedic boots. Foster also asserted he attempted to inventory his personal and legal property while he was in administrative segregation at Corcoran State Prison, but the matter was not addressed, and he was not given a Form 1083 until he arrived at Calipatria State Prison on September 6, 2017. Section E, "Second Level – Staff Use Only," of Form 602–'611 stated the second level appeal had been rejected and referred Foster to instructions in an attached letter dated October 24, 2017.

The October 24, 2017, letter was "CDC Form 695" (Form 695) completed by an appeals coordinator at Corcoran State Prison to report the results of the screening of Foster's second level appeal in Form 602–'611. The letter stated the appeal was rejected pursuant to Regulations because the "issue or complaint emphasis has been changed at some point in the process to the extent that the issue is entirely new, and the required lower levels of review and assessment have thereby been circumvented." (Boldface & italics omitted.) To explain the purported change in issues, the rejection letter stated: "Your initial issue was regarding not receiving a 1083 missing legal property. You have since been provided a copy of your 1083 and are now contending you are missing property. You must appeal this as a separate issue. Your appeal is being forwarded to you [at Calipatria State Prison.]"[3] On blank lines at the bottom of the Form 695, Foster

---

[3]    This narrow interpretation of Foster's Form 602–'611, is remarkable when compared to (1) the interpretation adopted at the first level of review and (2) the words actually written by Foster on Form 602–'611.

The first level appeal response dated September 17, 2017, stated the appeal issue as: "You were never issued a Property Inventory Form (1083) *and your property can not be located*." It also stated Foster requested that his personal/legal property be located, that he be allowed to personally inventory the property for damaged and lost items, that he be given a copy of the inventory form, and "[u]pon personally inventorying your property[,] any lost, damaged, missing or destroyed property be replaced." Thus, the first level response clearly did not construe the issues raised by Foster as being limited to the failure to provide an inventory form.

The first level response's description of Foster's issues accurately reflects the contents of Form 602–'611. Section A of the form stated (1) Property Officers Diaz and Medina had been unable to locate Foster's personal and legal property; (2) having his personal and legal property misplaced, lost, damaged or destroyed had caused actual damages to Foster's pending cases; and (3) no one seemed to know where his personal and legal property was. Foster ended Section A by asking, "Where's my personal & legal properties?" In section B of the form, Foster asked that, effective immediately, his personal and legal property be located, he be permitted to personally inventory all his property for damaged or lost items, and damaged or lost items be replaced. The only objectively reasonable interpretation of Form 602–'611 is that Foster was seeking the return of his personal property and the replacement of any lost or damaged items. It is

8.

responded "INCORRECT!!!" and stated that (1) Correctional Officer Rodriguez had instructed Foster during the September 17, 2017 telephone interview to include his missing property and invoices; (2) Rodriguez said Foster did not need to file a new Form 602; and (3) Foster followed those instructions in submitting his second level appeal. Foster dated his response November 8, 2017.

Foster's response to the Form 695 resulted in an appeals coordinator at Corcoran State Prison issuing another Form 695 screening Foster's second level appeal of Form 602–'611. The second Form 695 was dated November 15, 2017, and repeated the first Form 695's statement that the appeal had been rejected pursuant to Regulations because the "issue or complaint emphasis has been changed at some point in the process to the extent that the issue is entirely new, and the required lower levels of review and assessment have thereby been circumvented." The second Form 695's final paragraph stated: "Your appeal is dated 09/03/2017. You are instructed to follow the instructions provided to you within CDCR 695 dated 10/24/2017. Based on your current housing your appeal is being forwarded to you at [Calipatria State Prison.]"

*Foster's Second Form 602 Appeal*

On December 7, 2017, Foster completed and submitted another Form 602, which was assigned log number CSPC-8-17-06536 (Form 602–'536). In it, Foster asserted that on December 4, 2017, he was instructed by an appeals coordinator at Corcoran State Prison to file a Form 602 with the appeals coordinator at Calipatria State Prison. Foster stated he was instructed during the September 17, 2017, telephone interview that once his Form 602 was returned, he should attach an itemized list of the missing personal property, which he did and included a copy of several invoices to support his missing

---

not objectively reasonable to interpret his request as limited to obtaining an inventory form.

9.

property claim. Foster supported Form 602–'536 by attaching a copy of his earlier appeal--Form 602–'611.

On December 11, 2017, Appeals Coordinator C. Espitia at Calipatria State Prison conducted a first level screening of Form 602–'536 and rejected it. Espitia completed a Form 695 to document the results. The Form 695 referred to Foster, his inmate number, "PROPERTY, Replacement/Repair, 12/11/2017," and log number CAL-D-17-01783. The form stated: "The enclosed documents are being returned to you for the following reasons: [¶] ***Be advised that your appeal has been forwarded to another CDCR unit for processing.*** [¶] ***Your appeal dated 12/7/18, regarding Missing Property has been forwarded to COR[CORAN] for review.***" In Foster's view, the fact that officials at Corcoran State Prison told him to file another Form 602 with Calipatria State Prison followed by the fact that the appeals coordinator at Calipatria State Prison sent Form 602-'536 to Corcoran State Prison (see below) shows officials at Corcoran State Prison provided him with bad information, attempted to avoid dealing with their loss of his property, and hindered his use of the inmate grievance process.

The next step in CDCR's processing of appeal Form 602–'563 was documented by an "INMATE APPEAL ASSIGNMENT NOTICE," dated December 20, 2017, from the appeals coordinator at Corcoran State Prison. The notice informed Foster that Form 602–'536 had been assigned to a staff reviewer designated "AW 3C" for a first level response, listed the due date of that response as February 2, 2018, and stated: "If dissatisfied, you have 30 days from the receipt of the response to forward your appeal for SECOND level review."**[4]**

---

**4**  This sentence provides an interpretation of Regulations 3084.8, subdivision (b)(3). That provision states an inmate "must submit the appeal within 30 calendar days" after "receiving an unsatisfactory departmental response." The regulatory phrase "submit the appeal" is interpreted by the assignment notice to mean "forward your appeal."

A "FIRST LEVEL APPEAL RESPONSE" dated January 4, 2018, was sent to Foster by Sergeant E. Magallenes and Associate Warden T. Cambell of Corcoran State Prison. The response stated Foster requested a personal interview regarding his missing property and requested that his items of missing property be located and returned to him. The response stated a telephone interview had been conducted by Sergeant Magallanes on January 3, 2018, to afford Foster the opportunity to explain and support his claim. The response reported that Foster had acknowledged receiving six boxes of property from Corcoran State Prison and stated he had not received the missing property items noted in his Form 602.

The document's paragraph labeled "**APPEAL RESPONSE**" stated Foster "failed to provide a CDCR 1083 Property Recite [*sic*] from CSP-Calipatria at the time they issued you your property. The property items you claim are missing are inventoried and documented on the CDCR 1083 Property Recite [*sic*] provided to you by CSP-Corcoran dated August 6, 2017. Therefore, based Om [*sic*] this information you [*sic*] appeal will be DENIED at the First Level Review."**5** The document's final paragraph labeled "**DECISION"** reiterated that the first level appeal was denied and then repeated word-for-word the sentence in the first level response to Form 602–'611, stating: "Your property was located and forwarded with you to Calipatria State Prison via North Kern State … Prison from CSP-Corcoran on September 5, 2017 via bus schedule M." In essence, officials at Corcoran State Prison informed Foster that none of his personal property was missing, officials at Corcoran State Prison did not lose any items, and,

---

**5** The inference that the items listed on the property receipt dated August 6, 2017, are not missing makes little sense. That was the date Foster was injured and transferred to a hospital. Foster contends items of his personal property went missing *after* he was sent to the hospital—that is, sometime while he was at the hospital or held in administrative segregation. Thus, the fact that items were listed on a receipt dated August 6, 2017, does not mean those items were included in the six boxes of property delivered to him at Calipatria State Prison in September 2017. Accordingly, the receipt dated August 6, 2017 (even if authentic), does not prove the items were not missing.

11.

instead, officials at Corcoran State Prison had sent *all* of Foster's property to him at Calipatria State Prison.

Foster appealed the first level appeal response by completing section D of Form 602–'536, and submitting it on January 29, 2018. Foster received an inmate appeal assignment notice dated February 12, 2018, that referred to Form 602–'536, identified the assigned staff reviewer as "AW 3C," listed March 21, 2018 as the response's due date, and stated:

> "Inmate FOSTER, this acts as a notice to you that your appeal has been sent to the above staff for SECOND level response. If you have any questions, contact the above staff member. If dissatisfied, you have 30 days from the receipt of the response to forward your appeal for THIRD level review. Third level appeals are mailed directly to: [¶] Chief of Inmate Appeals [¶] Department of Corrections [¶] P. O. Box 942883 [¶] Sacramento, CA 94283-0001"[6]

Consistent with this notice, section E, "Second Level – Staff Use Only," of Form 602–'536 stated the second level appeal had been assigned to "AW 3C" on February 12, 2018, noted a January 3, 2018 telephone interview of Foster had been conducted, and stated no second level interview was conducted. It also stated the appeal issue was denied on February 24, 2018, and the form (with the completed Section E) was "mailed/delivered to" Foster on March 2, 2018.

In addition, Foster was sent a one-page "SECOND LEVEL APPEAL RESPONSE" dated February 24, 2018, from Corcoran State Prison Chief Deputy Warden M. Sexton. The response stated (1) the second level decision was to deny the appeal; (2) Foster acknowledged in his January 3, 2018 telephone interview that he received six boxes from Corcoran; (3) Foster still asserted he had not received the

---

**6** This assignment notice, like the one dated December 20, 2017, interprets the requirement in Regulations section 3084.8, subdivision (b)(3) stating an inmate "must submit the appeal within 30 calendar days" to mean the inmate has "30 days from the receipt of the response to forward your appeal for THIRD level review." Specifically, the notice interprets the verb "submit" to mean "forward." (See fn. 3, *ante*.)

missing property items noted in his appeal and he requested compensation for the missing property; (4) Foster "failed to provide any additional information, documentation or evidence beyond what was provided at the First Level Review"; (5) "[o]n August 6, 2017, all of your personal and legal property located within your assigned cell was inventoried"; and (6) Foster was "unable to sign the CDCR 1083 property receipt due to being transported to Kaweah Delta Hospital, to be medically treated for the injuries you received during the racial riot which occurred on Sunday, August 06, 2017, at the CSP-Corcoran 3C Facility Recreational Yard."

After Foster received the second level denial, he completed section F of Form 602–'536, seeking a third level review, stating he was dissatisfied with the second level response and asserting he did not need to add any more evidence to support his missing property claim. Foster restated his allegation that his property had been improperly stored for safekeeping and referred to B. Resa's September 11, 2017 response in section B of his first Form 22 that described how his property had been handled while he was in administrative segregation. Foster also asserted the second level response violated the time constraints in Regulations 3084.8, subdivision (c)(2) and a delay notification had not been issued. Foster signed section F and "3/12/2018" was handwritten on the line following "Date Submitted." The preprinted portion of section F of the form states the request for third level review must be submitted by mail to CDCR's Inmate Appeals Branch at P.O. Box 942883, Sacramento, California and "[i]t must be received within 30 calendar days of receipt of prior response." On the first page of Form 602–'536, is a box designated for staff use only that contains multiple "received" stamps. One stamp reads "REC BY OOA" and immediately underneath is the date "APR -9 2018." The acronym "OOA" is used for the Office of Appeals. (CDCR's Department Operations Manual (2020) ch. 1, § 15000.16.)

Section G of Form 602–'536 stated the third level appeal was cancelled on July 10, 2018, and the form was "mailed/delivered to" Foster on July 11, 2018. In addition,

13.

M. Voong, Chief of the Office of Appeals sent Foster a letter dated July 10, 2018. The letter stated (1) Foster's appeal had been reviewed by Appeals Examiner T. Lee, Captain; (2) Form 602–'536 "reflects [that Foster] was sent the Second Level of Review response on March 2, 2018"; and (3) his third level "appeal was not received by the Office of Appeals until April 9, 2018; which is beyond allowable time constraints to file the appeal." Consequently, the letter informed Foster that his appeal was being cancelled pursuant to the Regulations and quoted the provision stating an inmate "must submit the appeal within 30 calendar days" of receiving an unsatisfactory response to an appeal filed. (Regs., § 3084.8, subd. (b).) The letter informed Foster that, once cancelled, an appeal could not be accepted and the cancellation decision could be separately appealed directly to the third level appeals chief.

## PROCEEDINGS

*The Lawsuit*

Foster, representing himself, signed a pleading dated December 20, 2017, labeled a "PETITION FOR WRIT OF REPLEVIN [¶] [Return of Property]" and an attached two-page memorandum of points and authorities. Foster also attached invoices showing the purchase of the missing personal property. On January 11, 2018, the Superior Court for the County of Kings filed the pleading and assigned it case No. 18C-0032.

Foster sought the return of personal property, including tennis shoes, sunglasses, gym shorts, watch, religious prayer oil, cosmetics, canteen food, body wash, vitamins, and orthopedic boots. Foster alleged the property (1) was lawfully owned by him, (2) was not illegal contraband, (3) was not used in any unlawful manner, (4) was unlawfully detained by Warden M. Sexton, and (5) had not been released to Foster or his designee as of the date of his pleading. In his prayer for relief, Foster requested the release of his property or, if its return was not possible, payment of its monetary equivalent of $500.

Foster's two-page writ petition and the attached two-page memorandum of points and authorities did not mention the administrative remedies available to inmates. Thus,

14.

Foster included no allegation that he had exhausted, or was excused from exhausting, those remedies. The only reference to the Government Claims Act (Gov. Code, § 810 et seq.) was in the memorandum of points and authorities, which asserted the act's claim presentation requirements do not apply to "actions for recovery of property seized incident to an arrest."

*First Order to Amend*

On February 2, 2018, the trial court set a hearing on its own motion for judgment on the pleadings for failure to allege or demonstrate exhaustion of administrative remedies through the third level of administrative review. The order directed Foster to file a first amended petition five court days before the hearing, which was set for March 9, 2018.

Foster did not file a first amended petition. Instead, on February 23, 2018, Foster filed a document with a caption stating, "Petitioner is 'Exempt' from pursuing the Inmate 602 Exhaustion Procedures that Prison Official's has made no longer available." In this document, Foster stated he was a pro per state prisoner seeking the return of or payment for personal property held in bailment while he was at Corcoran State Prison. He interpreted the court's February 2, 2018, order as "giving the petitioner several options: 1.) demonstrate exhaustion of administrative remedies through the third level; or 2.) demonstrate why exhaustion should not be required." Foster then set forth his "reasons why exhaustion should not be required." Foster referred to Regulations section 3084.8 and the time limits it contains for each of the three levels of administrative review conducted by CDCR officials.[7] He asserted prison officials had not complied with these deadlines in handling his Form 602 grievance. Foster argued this untimeliness and other

---

[7] First and second level "responses shall be completed within 30 working days from the date of receipt by the appeals coordinator." (Regs., § 3084.8, subd. (c)(1), (2).) "Third level responses shall be completed within 60 working days from the date of receipt by the third level Appeals Chief." (*Id*., subd. (c)(3).)

15.

actions by prison officials constituted a waiver of the exhaustion requirement and, moreover, he was exempt from pursuing the appeal procedures because they were no longer "available."

*Second Order to Amend*

At the March 9, 2018 hearing on the sua sponte motion for judgment on the pleadings, Foster appeared by telephone. Judge Burns's declaration states he "granted the motion with leave to amend the petition" and directed Foster "to file a First amended Petition alleging specific facts of what administrative remedies were pursued and to allege facts to support an assertion the exhaustion requirement should be excused." The declaration also states: "The First Amended Petition was ordered to be filed 20 days from the hearing." The March 9, 2018 docket entry is consistent with the declaration. The docket entry states Foster appeared by CourtCall and: "Discussion held regarding the plaintiff has not filed amended petition. Plaintiff makes argument. Court grants motion leave to amend. Plaintiff to file amended petition."

On March 26, 2018, Foster filed a document with a caption stating, "DUE TO EXTRAORDINARY CIRCUMSTANCES BEYOND PETITIONER'S CONTROL EXEMPT HIM FROM EXHAUSTING 'UNAVAILABLE' ADMINISTRATIVE REMEDY." This document set forth Foster's interpretation of what happened at the March 9, 2018 hearing. Foster asserts the court acknowledged during the hearing that it never read the pleadings and stated the court "has order[ed] the petitioner to refile an amended pleading, and/or his reasons why h[e] is excused from exhaustion the administrative procedures. [¶] Again! The petitioner set[s] forth his reasons for being excused from pursuing the exhaustion process." (Some capitalization omitted.) Foster's use of "and/or" indicates his understanding that he had been given a choice. Foster chose what he believed was his second option and his document again set forth his view that the administrative remedy was not available because, among other things, prison officials

16.

gave him faulty information, and deliberately obstructed and interfered with the grievance process, and willfully refused to respond within applicable deadlines.

*Order of Dismissal and Appeal*

On September 26, 2018, the trial court held a case management conference at which Foster appeared by telephone. A deputy attorney general made a special appearance. The trial court heard argument from Foster on the court's motion for judgment on the pleadings based on the failure to exhaust administrative remedies. After hearing Foster's arguments, the court granted its motion judgment on the pleadings. On October 12, 2018, the trial court signed and filed a written order dismissing the case for failure to exhaust. Foster timely appealed the dismissal.

## DISCUSSION

I.      MOTION FOR JUDGMENT ON THE PLEADINGS

A.      Authority of the Trial Court

The trial court's October 12, 2018 order set forth its reasons for granting the motion for judgment on the pleadings:

> "1. [Foster] failed to provide documents and/or evidence showing he exhausted under the Prison Litigation Reform Act, or that he was excused from the exhaustion process despite ample opportunity to do so; and

> "2. This court's sua sponte motion for judgment on the pleadings is granted due to [Foster's] failure to exhaust on the face of the complaint."

The order next stated the "sua sponte motion for judgement on the pleadings is **GRANTED**" and Foster's "case is **DISMISSED** for failure to exhaust."

Foster's appellant's opening brief includes arguments suggesting the trial court lacked the authority to dismiss the case on its own motion for judgment on the pleadings and should have accepted his proof of service of the complaint upon defendant. In Foster's view, defendant was in default, the trial court made excuses of defendant's willful refusal to appear, and the court lost its jurisdiction when it unconstitutionally and

17.

prejudicially denied his request for default. Foster's arguments about default are addressed in part IV.C. of this opinion.

The argument that the superior court did not have the authority to grant the motion for judgment on the pleadings requires us to consider the statutes that govern (1) the contents of a pleading and (2) motions for judgment on the pleadings. As to contents, a complaint or writ petition must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10.) The facts that must be included in a complaint or petition to properly allege a cause of action are referred to as the essential elements of the cause of action. The essential elements are determined by the substantive law that defines the cause of action. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:121, p. 6-36.) An example of a "cause of action" is the tort of conversion. The essential elements of conversion are described in part I.B.3. of this opinion.

A motion for judgment on the pleadings may be granted in favor of a defendant if "[t]he complaint does not state facts sufficient to constitute a cause of action against that defendant." (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) This ground "shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (*Id.,* at subd. (d).) The statute explicitly authorizes California trial courts to bring their own motions for judgment on the pleadings and to grant such motions. (*Id.*, at subd. (b)(2).)

Based on Code of Civil Procedure section 438, we conclude the trial court had the authority to bring its own motion for judgment on the pleadings. As a result, the court did not err when it considered whether the allegations in Foster's petition for writ of replevin were sufficient to state a cause of action. Accordingly, the next question we consider is whether the trial court properly concluded Foster's allegations were missing an essential element.

18.

B.　Foster's Cause of Action for Conversion of Personal Property

　　1.　*Standard of Review*

An order granting a motion for judgment on the pleadings for failing to state facts sufficient to constitute a cause of action is reviewed on appeal under the same rules that govern an order sustaining a general demurrer.  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 (*Angelucci*).)  Our Supreme Court addressed the standard of review of such a motion by stating:

> "[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice.  [Citations.]  'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.'  [Citation.]  'Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.'  [Citation.]"  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232; see Code Civ. Proc., § 452.)

Determining whether a pleading alleges facts sufficient to state a cause of action is a question of law.  (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)  Thus, appellate courts are obligated to independently determine the sufficiency of a pleading's allegations without deference to the trial court's conclusions.  (*Id*. at p. 1304.)  Ordinarily, a pleading "is sufficient if it alleges ultimate rather than evidentiary facts" constituting the cause of action.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550.)  " 'It has been consistently held that " 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.' " ' " (*Ibid*.)

　　2.　*Foster's Label, Allegations and Prayer for Relief*

Foster labeled his pleading as a petition for writ of replevin.  The common-law writ of replevin is the equivalent of the "action for the recovery of specific personal property" referred to in Code of Civil Procedure section 667.  (*Berry v. Bank of*

19.

*Bakersfield* (1918) 177 Cal. 206, 209.)  "In actions for specific recovery, whether in the nature of replevin or detinue, if the property cannot be recovered, judgment may be given for its value, and it is customary to pray for that alternative relief."  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 693, p. 111.)  Under current California law, the common law forms of action named replevin, detinue and trover are addressed by the tort of conversion of tangible personal property.  (*Ibid*.)  The tort of conversion is committed by the defendant's " 'wrongful exercise of dominion over personal property of another.' "  (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.)

Here, Foster labeling his pleading as a petition for writ of replevin is "a relatively harmless historical observation."  (5 Witkin, Cal. Procedure, *supra*, Pleading, § 693, at p. 112.)  We, like the trial court, are required to look past the pleading's label and examine its substance.  (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.)  The substance of Foster's petition is contained in his allegations and prayer for relief.  Foster alleged that (1) prison officials seized his personal property; (2) the property is lawfully owned by him, is not illegal contraband, and is not used in any unlawful manner; and (3) prison officials have unlawfully detained the property and have not released it to Foster or his agent or designee.  Foster's prayer for relief requested the release of his property or, if its return was not possible, payment of $500, its monetary equivalent.  This prayer for relief is consistent with customary practice (see 5 Witkin, Cal. Procedure, *supra*, Pleading, § 693, p. 111) and Code of Civil Procedure section 667, which states:  "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention."

Based on the allegations and prayer for relief, we conclude Foster is pursuing an action for the recovery of specific personal property (Code Civ. Proc., § 667) and his cause of action is the tort of conversion.

### 3. Essential Elements

The essential elements of conversion are " '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.' " (*Voris v. Lampert*, *supra*, 7 Cal.5th at p. 1150.)  This formula does not contain any element of wrongful intent or motive because conversion in California is a strict liability tort.  (*Ibid*.)  In other words, "neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. ... '[T]he tort consists in the breach of what may be called an absolute duty ....' " (*Poggi v. Scott* (1914) 167 Cal. 372, 375; see *Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124 ["mistake, good faith, and due care are ordinarily immaterial, and cannot be set up as defenses in an action for conversion"].)

The foregoing general statement of the elements of conversion cover several different types of wrongful exercises of dominion over personal property of another.  One type of wrongful exercise of dominion occurs when a defendant refuses to return items of personal property after the plaintiff has demanded their return.  (See CACI No. 2100 [essential factual elements of conversion]; *Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 609  ["Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully"]; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 699, p. 116 [where original possession was lawful, withholding does not become tortious until plaintiff has demanded possession and defendant has refused].)

Here, Foster's petition adequately alleged the three elements of the tort of conversion—namely, (1) his ownership and right to possession of the personal property, (2) defendant's failure to return the property to him, and (3) resulting harm.  The Form 22 and Form 602s Foster submitted to prison officials establish that he demanded the return of his property.  Accordingly, the order dismissing the case cannot be upheld on the

ground Foster failed to adequately allege one or more of the elements that define the tort of conversion of personal property. (See *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187 [judgment of dismissal will be affirmed if proper on any grounds, whether or not the trial court relied on those grounds].) Consequently, we examine what other elements might be required when an inmate seeks the return of personal property from prison officials.

### 4. *Government Claims Act Does Not Apply*

Some inmate lawsuits alleging state law claims against prison officials are subject to the claim presentation requirements of the Government Claims Act. Generally, when a cause of action falls within the scope of the Government Claims Act, submission of a claim is a condition precedent to maintaining a tort action and compliance is treated as an essential element of the cause of action that must be pleaded. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239–1240.) Despite other administrative remedies that may be available, prisoners have an independent "obligation to comply with the Government Claims Act." (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1382 (*Parthemore*).) Accordingly, we consider whether the Government Claims Act applies to Foster's claim for the return of his personal property or its value and, as a result, compliance with the act's claim presentation requirements must be pleaded. This broad question can be phrased more narrowly using some of the statutory language that defines the scope of the Government Claims Act. Thus, we address whether Foster's prayer for relief is a "claim[] for money or damages" for purposes of Government Code section 905.2, subdivision (b).

To place this question in its proper legal context, we note Civil Code section 3336 identifies the damages recoverable in a conversion action. "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶ (1)] The value of the property at the time of the conversion, with the interest from that time, or, an amount

22.

sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶ (2)] A fair compensation for the time and money properly expended in pursuit of the property." (Civ. Code, § 3336; see Code Civ. Proc., § 667 [judgment for possession of personal property or its value].) This statutory provision does not provide an exclusive list of recoverable damages. Courts also have allowed emotional distress damages to be recovered by victims of conversion in appropriate circumstances and have allowed punitive damages to be recovered upon a showing of malice, fraud, or oppression. (*Voris v. Lampert*, *supra*, 7 Cal.5th at p. 1151.)

In this case, despite the various types of damages that California law allows to be recovered in an action for conversion of personal property, Foster has not requested damages for emotional distress, punitive damages, or compensation for his time spent pursuing his personal and legal property. Instead, his request is limited to the return of his personal property or its monetary equivalent, which he states is $500. Foster's narrow request for relief qualifies his petition as the type of petition for writ of mandate discussed in *Escamilla*, *supra*, 141 Cal.App.4th 498. In *Escamilla*, the court held an inmate could pursue a petition for writ of mandate seeking the return of specific personal property (or the value thereof) without first presenting a claim under the Government Claims Act. (*Escamilla, supra,* at p. 513.) The court's holding was based on its conclusion that such a petition does not assert a claim "for money or damages" for purposes of Government Code section 905.2, subdivision (b) and, therefore, the inmate was not required to comply with the claim presentation requirements of the Government Claims Act. (*Escamilla*, *supra*, at p. 513.)

Based on *Escamilla* and the cases discussed therein, we conclude Foster's petition for writ of replevin with its narrow request for relief is not subject to the Government Claims Act's claims presentation requirements. (See *Holt v. Kelly* (1978) 20 Cal.3d 560, 565; *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 124 [complaint seeking

recovery of property seized and wrongfully withheld by local police was not subject to the Act's claim presentation requirements].)  Therefore, Foster need not allege compliance, or an excuse from complying, with the claim presentation requirements of the Government Claims Act.

                *5.        Exhaustion as an Essential Element of the Cause of Action*

"When an applicable statute, ordinance, or regulation provides an *adequate* administrative remedy, a party must exhaust it before seeking judicial relief."  (*Plantier v. Ramona Municipal Water Dist.* (2017) 12 Cal.App.5th 856, 865.)  Where administrative remedies exist, California courts usually will not have subject matter jurisdiction over a dispute until the administrative tribunal has made a final determination.  (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 666 (*Wright*).)  Allowing an action to proceed in state court prior to a final administrative determination would interfere with the jurisdiction of the administrative tribunal.  (*Ibid.*)

"Whether the doctrine of exhaustion of administrative remedies applies in a given case is a legal question that we review de novo."  (*Coastside Fishing Club v. California Fish & Game Com.* (2013) 215 Cal.App.4th 397, 414.)  However, the legal question of whether California's exhaustion doctrine applies to inmate grievances has been answered many times.  "In the 1970's, California's state courts specifically applied the general exhaustion requirement to prisoner suits, requiring prisoners to exhaust administrative remedies before seeking judicial relief."  (*Wright*, *supra*, 122 Cal.App.4th at p. 665.)  The California Supreme Court determined the "[t]he requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoners.' "  (*In re Dexter* (1979) 25 Cal.3d 921, 925.)  Thus, in *Parthemore*, *supra*, 221 Cal.App.4th 1372, the court concluded an inmate's "complaint is vulnerable to demurrer on administrative exhaustion grounds when it fails to plead either that administrative remedies were exhausted or that a valid excuse exists for not exhausting."  (*Id.* at p. 1379.)

Based on the foregoing precedent, Foster is required to allege that he exhausted his administrative remedies or that he had a valid excuse for not exhausting the administrative remedies. In other words, California law treats exhaustion or an excuse as an essential element of an inmate's cause of action for the recovery of personal property or its monetary value.[8]

In this case, Foster's two-page petition for writ of replevin for the return of property and the attached two-page memorandum of points and authorities made no reference to the inmate grievance procedures, the exhaustion of administrative remedies, or an excuse for failing to exhaust. Consequently, the trial court correctly concluded the petition did not "state facts sufficient to constitute a cause of action" and, therefore, was subject to a motion for judgment on the pleadings. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) Because Foster's petition omitted an essential element, the next question is whether we should direct the trial court to grant him leave to file a first amended petition to cure the omission. Foster's failure to file a first amended petition is addressed in part III. of this opinion.

II.      AMENDING TO PLEAD EXHAUSTION WAS EXCUSED

A.      Legal Principles

Generally, leave to amend should be granted if "there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The plaintiff has the burden of demonstrating a reasonable possibility of curing the defect. (*Ibid.*)

---

[8]      Federal law treats the exhaustion of administrative remedies differently than California law. Chief Justice Roberts, writing for a unanimous United States Supreme Court, concluded the exhaustion requirement in the federal Prison Litigation Reform Act is an affirmative defense and "inmates are not required to specially pled or demonstrate exhaustion in their complaints." (*Jones v. Bock* (2007) 549 U.S. 199, 216.) Thus, in federal cases, "while the exhaustion requirement is mandatory, it is not jurisdictional" and need not be addressed in the complaint. (3 Mushlin, Rights of Prisoners (5th ed. 2017) § 17:17, p. 221.)

25.

Whether a plaintiff has made the required demonstration is not necessarily limited to the matters presented to the trial court.  Code of Civil Procedure section 472c, subdivision (a) provides:  "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made."  In *City of Stockton v. Superior Court*, *supra*, 42 Cal.4th 730, the Supreme Court interpreted this statute to mean:  "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff."  (*Id.* at p. 746, citing *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)  Because motions for judgment on the pleadings are reviewed on appeal under the same rules applied to demurrers (*Angelucci*, *supra*, 41 Cal.4th at p. 166), we conclude the principle that leave to amend is always open on appeal extends to orders granting a motion for judgment on the pleadings, at least where the motion is brought and granted before an answer is filed.  (See pt. III., *post*.)

B.    Excuse for Not Exhausting

The question of whether Foster has demonstrated he could amend to allege an excuse from exhausting the administrative remedies provided to inmates requires us to consider the legal principles that define the situations in which exhaustion is excused. Initially, we note California courts have long recognized a limited number of exceptions to the exhaustion doctrine.  (*Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 7.)  In *Kaiser Foundation Hospitals v. Superior Court, supra,* 128 Cal.App.4th 85, the court stated exhaustion is not required when (1) " 'the subject matter of the controversy lies outside the administrative agency's jurisdiction,' " (2) " 'pursuit of an administrative remedy would result in irreparable harm,' " (3) " 'the administrative remedy is inadequate or unavailable,' " or (4) the "administrative remedy is futile as the aggrieved party can positively state what the administrative agency's decision in his particular case would be.' "  (*Id.* at p. 101.)

### 1. Futility

The "futility" exception to the exhaustion of administrative remedies "is a very narrow one." (*County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 77.) " 'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case." ' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080–1081; *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313.) Here, Foster does not contend that prison officials have positively stated what the ruling will be in his missing property case. As a result, he has not demonstrated he could plead futility as an excuse from the exhaustion requirement.

### 2. Unavailable Remedies

Foster's primary argument is that inmates cannot be required to exhaust an administrative remedy that is not available. Citing *Little v. Jones* (10th Cir. 2010) 607 F.3d 1245, he further contends an administrative remedy is not available if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy." (*Id*. at p. 1250.) Such actions "render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." (*Ibid*.)

Foster's citation of federal authority, including the Prison Litigation Reform Act of 1985, raises the legal question of whether California law and federal law define the "unavailability" of administrative remedies in the same or similar ways. To resolve this question, we consider how federal law defines unavailability.

Under the Prison Litigation Reform Act, inmates are required to exhaust "such administrative remedies as are available" before filing a civil action challenging prison conditions. (42 U.S.C. § 1997e, subd. (a).) "[T]he ordinary meaning of the word 'available' is ' "capable of use for the accomplishment of a purpose," and that which is "accessible or may be obtained." ' " (*Ross*, *supra*, 136 S.Ct. at p. 1858.) In *Ross*, the

27.

court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." (*Id*. at p. 1859.) First, an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates. (*Ibid*.) Second, an administrative scheme might be so difficult to understand that no ordinary prisoner can discern or navigate it and, therefore, for practical purposes, the administrative scheme is incapable of use. (*Ibid*.) Third, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (*Id*. at p. 1860; see *Hemphill v. State of New York* (2d Cir. 2004) 380 F.3d 680 [after prisoner filed grievance, officer assaulted prisoner twice and threatened to accuse him of sexually assaulting another officer]; *Mitchell v. Horn* (3d Cir. 2003) 318 F.3d 523 [excusing exhaustion where prisoner was denied access to mandatory grievance forms].)

Based on the arguments presented by Foster, we need consider only whether the third category of unavailability identified by the United States Supreme Court also describes when an administrative procedure is not available to an inmate for purposes of California's exhaustion of remedies doctrine. Because the reasons for the federal and state law exhaustion requirements are essentially the same,[9] we conclude the third category also identifies circumstances in which an administrative procedure is "unavailable" to an inmate for purposes of California law. Thus, an inmate is excused from exhausting the appeal procedure through the third level of review when prison

---

[9] The main policies underlying the exhaustion doctrine are administrative autonomy and judicial efficiency. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391; see *Jones v. Bock*, *supra*, 549 U.S. at p. 223 [exhaustion requirement reduces burden of prisoner litigation on the courts]; *Bowen v. City of New York* (1986) 476 U.S. 467, 484 [exhaustion allows agency to function efficiently, correct their own errors, and compile a record adequate for judicial review].)

officials have thwarted the inmates attempts to complete the grievance process through machination,[10] misrepresentation, or intimidation.

An example of machinations thwarting an inmate's attempts to complete the grievance process was discussed in *Sapp v. Kimbrell* (9th Cir. 2010) 623 F.3d 813. There, the court stated it did "not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable." (*Id.* at p. 826.)  For administrative remedies to be effectively unavailable due to improper screening, "the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in … court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." (*Id.* at pp. 823–824.)

### C. How to Properly Plead Unavailability

We next consider the level of factual detail that an inmate must write down in his pleading to properly allege administrative remedies are unavailable because prison officials have thwarted the inmate "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (*Ross*, *supra*, 136 S.Ct. at p. 1860.) Ordinarily, a pleading "is sufficient if it alleges ultimate rather than evidentiary facts." (*Doe v. City of Los Angeles*, *supra*, 42 Cal.4th at p. 550.)  However, distinguishing "ultimate facts" from "evidentiary facts" and "legal conclusions" can be difficult.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 6:124, p. 6-38; see *Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 473 ["distinction between conclusions of law and ultimate facts is not at all clear"].)  Generally, court and litigants

---

[10]  The noun "machination" is defined as "a scheming or crafty action or artful design intended to accomplish some usu[ally] evil end."  (Merriam-Websters Collegiate Dict. (10th ed. 1999) p. 697.)

are guided in making these distinctions by the principle that a plaintiff is required only to set forth the essential facts with " ' " 'particularity sufficient to acquaint a defendant with the nature, source and extent of [the plaintiff's] cause of action.' " ' " (*Doe v. City of Los Angeles*, *supra*, 42 Cal.4th at p. 550.) Under this doctrine of less particularity, less specificity is required in pleading matters of which the defendant has superior knowledge. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 6:121.5, p. 6-36; see *Burks*, *supra*, at p. 474.) For policy reasons, some causes of action, such as fraud and negligent misrepresentation, must be pleaded with particularity—that is, the pleading must set forth how, when, where, to whom, and by what means the representations were made. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

Having considered the basic principles governing California pleading and the policies underlying the exhaustion requirement (see fn. 9, *ante*), we conclude an inmate must allege specific facts showing the administrative procedure is effectively unavailable. (*In re Thompson* (1975) 52 Cal.App.3d 780, 793; see *Wright*, *supra*, 122 Cal.App.4th at p. 667.) Consequently, a statement in the pleading that the inmate is excused from exhausting administrative remedies because prison officials have thwarted the inmate's use of the grievance process through machination, misrepresentation, or intimidation is treated as a conclusion of law rather than an allegation of ultimate fact and, thus, does not properly allege unavailability. (Cf. *Jackson v. Pasadena City School Dist.* (1963) 59 Cal.2d 876, 879 [averments with respect to racial segregation and gerrymandering were treated as allegations of ultimate facts].) To properly plead the excuse of unavailability based on prison officials' machinations, misrepresentations, or intimidation, the pleading must state how, when, where, to whom, and by what means the machinations, misrepresentations or intimidation were accomplished.

D.    Foster's Showing of the Facts He Could Allege

1.    *General Allegations*

We first consider whether statements made in Foster's March 26, 2018 court filing would adequately allege unavailability if those statements had been included in a first amended petition.  In that filing, Foster stated:

> "Petitioner must be excused from pursuing the unavailable grievance exhaustion procedures process because he took all reasonable and appropriate steps to exhaust his grievance, and still has been precluded from exhausting, not through his own fault but by prison officials at Corcoran [State Prison] Appeal Coordinator's Office willful and deliberate obstructions, hindering and interfering with the administrative grievance exhaustion procedure process."  (Some capitalization omitted.)

Based on our earlier conclusion that the excuse of unavailability must be pleaded by alleging specific facts, we conclude this statement, if it had been included in a first amended petition, does not adequately plead the specific details needed to show machinations, misrepresentations or intimidation rendered the administrative process unavailable.  Therefore, this statement, standing alone, does not demonstrate Foster is capable of properly pleading an excuse from the exhaustion requirement.

2.    *Untimely Response*

Second, we consider Foster's statement that the appeals coordinators at Corcoran State Prison willfully refused to respond to his grievance within the prescribed time limits and his contention that this refusal rendered the remedies offered through the grievance process unavailable.  Foster refers to the inmate appeal assignment notice dated December 20, 2017, informing him that his second grievance, Form 602–'536, had been assigned for a first level response and the response's due date was February 2, 2018.  Foster contends the appeals coordinator did not comply with that due date and, furthermore, the inmate appeal assignment notice dated February 12, 2018 for the second level response did not cure the time-constraint violation.  Foster argues this failure to provide a timely response rendered the grievance process unavailable.  As described

31.

below, our review of the documents presented leads us to conclude Foster cannot allege the response was, in fact, untimely.

Appeal Form 602–'536 shows Foster appealed the first level response by completing Section D of the form and submitting it on January 29, 2018. Since Foster could not have appealed the first level response before receiving that response, the January 29, 2018, submission of his appeal for second level review establishes that he received the first level response before the February 2, 2018 due date. Consequently, we conclude Foster would not be able to allege specific facts showing the first level response to Form 602–'536 was untimely.

Based on this conclusion, we need not address whether any delay in the grievance process had reached the point of being unreasonable. (See 2A Cal.Jur.3d (2015) Administrative Law, § 722, p. 106 [exceptions to exhaustion doctrine includes "situations where the agency indulges in unreasonable delay"].) In addition, we need not address whether an unreasonable delay would excuse an inmate from exhausting administrative remedies. (See *Wright*, *supra*, 122 Cal.App.4th at p. 667 [CDCR's delay did not excuse inmate's failure to exhaust his available administrative remedies; remedy for an unreasonable delay is a writ of mandate ordering CDCR to perform its duty of completing the review].)

### 3. *Motive and a Pattern of Retaliation*

The unavailability of the inmate grievance process may be properly alleged without allegations about the motives of prison officials. In other words, the personal reasons for their machination, misrepresentations or intimidation (i.e., their subjective states of mind) are not what makes the administrative process unavailable to the inmate. However, motives are not completely irrelevant. When an inmate is able to allege prison officials' misconduct in handling his grievance or grievances is part of a larger pattern of retaliatory conduct against the inmate, fewer wrongful acts involving the grievance

process itself are required to sufficiently state excuse of unavailability based on the officials' machinations, misrepresentations and intimidation.

Here, Foster contends the mishandling of his grievances is part of a larger pattern of retaliatory action motivated by his disclosure of information to CDCR's Office of Internal Affairs about prison officials covering up a murder and by his filing of administrative grievances addressing other misconduct by officials at Corcoran State Prison. The acts of retaliation include, without limitation, (1) allowing Foster to be assaulted to another inmate while he was strapped and handcuffed to a gurney; (2) failing to properly store his personal property while he was at the hospital and in administrative segregation; (3) placing him in administrative segregation instead of the prison infirmary; (4) placing him in administrative segregation without giving him a property receipt or the opportunity to inventory his belongings; (5) ignoring his demands for an excessive use of force video; and (6) ignoring his two requests for his legal property, which requests were made prior to his completion of his first Form 22 on August 31, 2017. These allegations of retaliatory conduct put Foster's allegations of misconduct in handling his grievances in perspective and supports his allegation that officials have deliberately obstructed and interfered with the grievance process.

### 4. Improper Screening

"[W]here prison officials improperly screen out inmate grievances, they render administrative remedies effectively unavailable. [Citation.] In such a case, 'the inmate cannot pursue the necessary sequence of appeals.' " (*McClure v. Chen* (E.D.Cal. 2017) 246 F.Supp.3d 1286, 1291, citing *Sapp v. Kimbrell*, *supra*, 623 F.3d at p. 823.) The consequences of having a grievance rejected during screening is described in the preprinted portion of Form 695, which states that (1) an inmate cannot appeal a rejected appeal; (2) once an appeal has been cancelled, it may not be resubmitted; (3) "a separate

appeal can be filed on the cancellation decision;" and (4) "[t]he original appeal may only be resubmitted if the appeal on the cancellation is granted."

Here, Foster's supplemental brief contends the Form 695 dated October 24, 2017, that screened out his first grievance on Form 602-'611 set forth false reasons for the decision. The Form 695 stated Form 602-'611 was rejected because the appeal issue had changed. As explained in footnote 2, *ante*, the interpretation that Foster's issue had changed was not objectively reasonable.

Consequently, Foster is able to allege that (1) Form 602-'611 was actually filed and, if pursued through all levels of administrative appeal, would have exhausted the claims he is pursuing in his petition for writ of replevin; (2) Form 602-'611 was improperly screened out at the second level based on the improper interpretation adopted in the Form 695 dated October 24, 2017; and (3) prison officials screened out Form 601-'611 for reasons inconsistent with or unsupported by applicable regulations. (See *Sapp v. Kimbell*, *supra*, 623 F.3d at pp. 823–824.) Foster also can allege the grounds for the improper screening were created when he followed Correctional Officer Rodriguez's instructions to include invoices for the items of missing property as part of his second level appeal because the additional information he presented was wrongly interpreted as presenting new issues.

In addition, Foster is able to allege that misinterpretation of Form 602–'611 was not an isolated event. After Foster informed the appeals coordinators that he was following Correctional Officer Rodriguez's instructions when he included the invoices in the second level appeal, Foster was sent a second Form 695, which was dated November 15, 2017, and reiterated the objectively unreasonable interpretation that Foster's issue had changed to the extent that the issue was "entirely new." Based on the boxes marked on the two Form 695s, it appears that each was issued by a different appeals coordinator at Corcoran State Prison. Thus, the misinterpretation of Form 602–'611 was not the error of a single official, but is evidence of a broader problem.

Here, we need not decide whether the acts of misconduct thwarting Foster's first grievance, Form 602–'611, were sufficient by themselves to plead the unavailability of the grievance process. Here, Foster has shown he can allege specific facts demonstrating the improper conduct continued to the handling of his second grievance, Form 602–'536. First, he was erroneously advised by officials at Corcoran State Prison to file the second grievance at Calipatria State Prison, when Foster's claim related to matters that occurred at Corcoran State Prison. Second, the January 4, 2018 first level appeal response to the second grievance (once it had been forwarded to Corcoran State Prison for review) made little sense because officials referred to an inventory form completed on August 6, 2017, *before* items of Foster's personal property went missing, and relied on that form to show the items were not missing. (See fn. 4, *ante*.) This first level appeal response provides further support for the inference that prison officials were continuing to manipulate the grievance process in a way that thwarted Foster's use of that process.

We conclude the improper screening of Foster's first grievance and the response at the first level of review of Foster's second grievance relating to the missing items of personal property provides a sufficient basis for alleging the inmate grievance process was rendered unavailable. Those acts of misconduct are sufficient to show Foster's use of inmate grievance process was being thwarted by prison officials' machinations and misrepresentations. Thus, we conclude Foster has demonstrated he could amend his petition to allege facts sufficient to state the unavailability of the grievance process.

### 5. *Post-Filing Conduct*

A "supplemental" pleading is used to allege facts occurring *after* the original pleading was filed. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 6:791, p. 6-203.) In contrast, the additional allegations in an "amended" pleading address matters that had occurred before the original pleading was filed. (*Id.*, ¶ 6:792, p. 6-203.) As a general rule, where an original pleading is filed before the cause

35.

of action has arisen, that defect cannot be cured by a supplemental complaint addressing matters that occurred after the original pleading was filed. (*Id.*, ¶ 6:799, p. 6-205.)

Based on the foregoing pleading principles, we have not relied on Foster's allegations of further misconduct occurring after his original petition for writ of replevin was filed on January 11, 2018. We have, however, considered them to determine if they undermine Foster's contention that the three levels of the administrative appeal process were unavailable. Specifically, we have examined those events to see if Foster obtained relief from the administrative process or, alternatively, actually exhausted the third level of review on Form 602–'536. If Foster had exhausted that grievance, it would tend to show that the process was not unavailable.

The papers Foster has submitted show he could allege (1) the second level appeal of Form 602–'536 was denied on the same dubious grounds as the first level appeal and (2) third level appeal was wrongly cancelled as untimely. On the matter of timing, Regulations section 3084.8, subdivision (b)(3) provides that an inmate "must submit the appeal within 30 calendar days" after receiving an unsatisfactory departmental response. As discussed in footnotes 3 and 5, *ante*, CDCR's assignment notices interpreted the regulatory phrase "submit the appeal" to mean "forward your appeal." In contrast, the preprinted portion of Section F of the form states the request for third level review must be submitted by mail to CDCR's Inmate Appeals Branch in Sacramento and "[i]t must be **received** within 30 calendar days of receipt of prior response." (Boldface added.) This interpretation effectively removes the timely presentation of a third level appeal from the prisoner's control. Prison officials who are physically handed the inmate's third level appeal could refrain from mailing it until some or all of the 30-day period expires. Also, additional delays could occur between the time the U.S. Postal Service physically places the appeal in the designated post office box and the time the Office of Appeals stamps the appeal as "received."

36.

Here, Form 602–'536 states the third level appeal was submitted on March 12, 2018. It was not stamped "REC BY OOA" by the Office of Appeals until April 9, 2018. Thus, 28 days lapsed between the time Foster submitted the third level appeal and the time it was stamped as received by the Office of Appeals in Sacramento. The length of this delay supports the inference that prison officials delayed the mailing of the appeal, delayed stamping it received, or both. Thus, for purposes of pleading an excuse for not exhausting, Foster could allege his third level of appeal was deemed untimely because of delays in the mailing or processing of the appeal that were intentional or the result of the exercise of ordinary diligence and, in addition, the delays thwarted his use of the grievance process.

In sum, events occurring after the petition for writ of mandate was filed support, rather than undermine, Foster's allegations that the administrative process was rendered unavailable to him and, thus, he should be excused from exhausting that process.

## III.    FAILURE TO FILE AN AMENDED PETITION

### A.    Background

The trial court gave Foster two opportunities to file a first amended petition that included allegations addressing the exhaustion of administrative remedies. Yet, Foster did not file an amended pleading captioned as a first amended petition for writ of replevin or mandate. (See Cal. Rules of Court, rule 3.1324(a)(1) [amended pleadings must be serially numbered].) This court's letter requesting supplemental briefing directed Foster to answer the following question:

> "Please explain why appellant did not file an amended pleading in accordance with the trial court's orders and, instead, filed documents in February and March 2018 that were, in practical effect, oppositions to the sua sponte motion for judgment on the pleadings? (CT 18 & 33; see CT 50 [lines 26-28] & 51 [lines 21-25])"

Foster's answer stated, "The appella[nt] did in fact! file an amended pleading in accordance with the trial court's orders." Foster supported his interpretation of the lower

court proceedings by asserting the record shows that, on February 23, 2018, and March 26, 2018, he "filed responsive pleading[s] to each of the court order[s] to alleg[e] an exhaustion of administrative remedies through the third level and of each filing, the trial court never address[ed] the pleading[s]."[11] Foster's supplemental brief specifically asked this court if he was wrong and asserted that what he "was instructed to do! he did it! and the trial court refused to address the pleading[s] and the evidence that was attached to each pleading." Based on this characterization or understanding of his documents, Foster contends he has demonstrated full compliance with any and all demands of the trial court and is entitled to relief on appeal.

## B. The Failure to Communicate

Initially, we address Foster's question about whether he was wrong in asserting he "filed responsive pleading[s]" in accordance with the trial court's orders. The answer is "yes"—Foster was wrong. As explained below, the documents he filed were not *pleadings* and, more specifically, were not a *first amended petition* for writ of replevin or mandate.

The arguments presented by Foster demonstrate that he, a self-represented inmate, did not understand the technical meaning of the words used in the trial court's directions. Furthermore, the court's treatment of the papers filed by Foster and its subsequent order demonstrates the court did not recognize Foster's failure to understand the instructions given by the court. In short, there was a failure to communicate between the court and the self-represented inmate.

---

**11** The caption in Foster's document filed February 23, 2018, stated: "Petitioner is 'Exempt' from pursuing the Inmate 602 Exhaustion Procedures that Prison Official's has made no longer available." The caption in Foster's document filed March 26, 2018, stated: "DUE TO EXTRAORDINARY CIRCUMSTANCE BEYOND PETITIONER'S CONTROL EXEMPT HIM FROM EXHAUSTING 'UNAVAILABLE' ADMINISTRATIVE REMEDY."

Contrary to Foster's understanding, the documents he filed did not comply with the trial court's directions to file an *amended pleading*. The term "pleading" has a specific meaning that is limited to a document containing the formal allegations of a party's claims or defenses. (Code Civ. Proc., § 420.) "The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints." (Code Civ. Proc., § 422.10.) In addition, a petition for writ of mandate is considered a pleading for purposes of the statutes and rules governing civil actions. (Code Civ. Proc., § 1109.) Thus, the term "pleading" is narrower than the term "papers," which includes all documents offered for filing in any case. (Cal. Rules of Court, rule 2.3(2).) The documents filed by Foster in February and March 2018, which he describes as pleadings, qualify as papers and are not "pleadings" in the technical, legal definition of that word.

More importantly for purposes of this appeal, the term "amended pleading" has a specific meaning for purposes of the California Rules of Court and the Code of Civil Procedure. (Cal. Rules of Court, rule 3.1324 [amended pleadings and amendments to pleadings]; see Code Civ. Proc., § 471.5 ["amendment or amended complaint"].) An amended pleading supplants (i.e., entirely replaces) the prior pleading and it, standing alone, contains all the plaintiff's allegations and requests for relief. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884; see also, Cal. Rules of Court, rule 3.1324 [amended pleadings and amendments to pleadings].) Courts prefer amended pleadings because it takes less time to refer to a single document when evaluating all "the formal allegations" of the party's claims (Code Civ. Proc., § 420), and there is less chance of missing allegations than when those allegations are contained in two or more documents. Also, it is relatively easy to identify the single document that is in effect at the time (i.e., the operative pleading) because amended pleadings must be serially numbered. (Cal. Rules of Court, rule 3.1324(a)(1).)

In comparison to an amended pleading, an "amendment to a pleading" is a separate written document containing only the new material to be added to the prior

pleading. (See Cal. Rules of Court, rule 3.1324 [amended pleadings and amendments to pleadings].) As a result, when an "amendment to a pleading" is allowed, the amendment and the prior pleading (and prior amendments, if any) must be read together to determine what formal allegations comprise the claims being asserted by the plaintiff in the lawsuit.

Here, the trial court used the terms "amended pleading" and "amended petition" in its technical sense to refer to a single, stand-alone document containing all of Foster's allegations. In contrast, Foster thought the term had a broader meaning and encompassed the papers he filed in February and March of 2018 *to expand or add to* the allegations in his original petition for writ of replevin. Accordingly, although Foster and the court may have used the same words, each gave those words different meanings. Foster did not understand the precise nature of the court's orders and he was wrong in asserting he "filed responsive pleading[s]" in accordance with the trial court's orders.

C.      Consequence of the Failure to Communicate

Next, we consider the impact of the failure to communicate and the resulting absence of a first amended petition. One possibility is that Foster is responsible for understanding and complying with the trial court's orders and, because he failed to fulfill this responsibility, he must suffer the dismissal of his lawsuit. A second possibility is that the court must shoulder the responsibility for the misunderstanding and, as a result, (1) the dismissal should be reversed and (2) this matter should be remanded with instructions Foster can understand directing him to file a first amended petition. A third possibility is that Foster's failure to understand the court's directions does not affect the outcome of this appeal because of the way other issues are decided. As explained below, we conclude the third possibility applies.

1.      *Willful Disobedience of a Court Order*

First, under California law, a plaintiff's failure to comply with a trial court's order justifies the dismissal of the lawsuit as a terminating sanction where the plaintiff willfully

disobeyed the orders and certain other conditions exist. (See *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1244–1246.)[12] This principle of law raises the question of whether Foster willfully disobeyed the two orders to file a first amended petition.

Based on our review of the record and briefing, we conclude Foster's failure to file a first amended petition with allegations addressing exhaustion or an excuse was not the product of willful disobedience. Instead, it occurred because Foster did not understand what it meant to file a first amended petition. Foster's attempts to comply consisted of papers addressing the exhaustion issue raised by the court and contending he was exempt from exhausting procedures that prison officials had made no longer available. Thus, Foster's papers show his intent to address the substance of the court's orders, but also show he did so in a procedurally incorrect form. Foster's mistake provided him with no tactical advantage or other benefit. Thus, we conclude he did not willfully disobey the trial court's orders and the dismissal of his lawsuit cannot be upheld as an appropriate terminating sanction.

### 2. *The Failure to Communicate as an Abuse of Discretion*

A trial court's responsibility for failing to communicate with a self-represented litigant is addressed in part by the legal principles or standards set forth in *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276 (*Gamet*) and discussed by this court in *Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799 (dismissal of plaintiff's action reversed; trial court abused its discretion in failing to provide clear and understandable instructions to self-represented plaintiff).[13]

---

**12** The element of willful disobedience of the trial court's orders is also present in California's disentitlement doctrine, which provides that such disobedience may be grounds for dismissal of an appeal. (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757–758.)

**13** In *Gamet*, the court stated: "While attorneys and judges commonly speak (and often write) in legal shorthand, when an in propria persona litigant is involved, special care should be used to make sure that verbal instructions given in court and written notices are clear and understandable by a layperson. This is the essence of equal and fair

41.

Ultimately, whether or not the trial court abused its discretion in its orders and discussions with Foster does not affect the outcome of this appeal because other principles of appellate procedure control the result. The lenient rule of law that "leave to amend is always open on appeal" (*City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 746) requires the reversal of the dismissal order because Foster has demonstrated that he is able to draft and file a first amended petition curing the defect that provided the ground for dismissal. Specifically, Foster has shown he can allege facts sufficient to plead his exhaustion of administrative process is excused because his use of the grievance process was thwarted by prison officials. As a result, the order dismissing his petition should be reversed and the matter remanded with directions to allow Foster to file a first amended petition.

For the sake of efficiency and to provide directions that we think are clear and understandable to a self-represented layperson whose access to legal materials is limited by his incarceration, our remand instructions provide the trial court with wording to be used in its order allowing Foster to file a first amended petition. In our view, that wording, when considered together with this opinion, is sufficiently clear that a failure to comply could not be overlooked on the ground Foster did not understand what was meant by a "first amended petition" and the need to draft and file a single pleading that includes allegations that the misconduct of prison officials rendered the grievance process unavailable.

---

treatment, and it is not only important to serve the ends of justice, but to maintain public confidence in the judicial system." (*Gamet*, *supra*, 91 Cal.App.4th at p. 1284.) The court in *Gamet* also stated that judges should "take at least some care to assure their orders are plain and understandable. Unfortunately, the careless use of jargon may have the effect, as in the case before us, of misleading an in propria persona litigant. The ultimate result is not only a miscarriage of justice, but the undermining of confidence in the judicial system." (*Id.*, at p. 1285.)

IV.    OTHER MATTERS*

Foster's appellate briefing has raised other issues that do not affect the outcome of this appeal.  Those issues are described here.

A.    Disqualification of Judge

On March 5, 2018, Foster filed a peremptory challenge to Judge Chrissakis under Code of Civil Procedure section 170.6.  As a result of this challenge, the case was assigned to Judge Burns.  In July 2018, Foster filed a challenge to Judge Burns, alleging he was prejudiced against Foster.  Judge Burns prepared a declaration responding to the challenge.  Another judge reviewed the parties' declarations, authorities, and exhibits.  In August 2018, the second judge filed an order on Foster's statement of disqualification, concluding the challenge lacked sufficient supporting evidence and supporting relevant legal authority.  Accordingly, the order stated Foster's "challenge for cause under Code of Civil Procedure section 170.1 is denied."  Foster's appellant's opening brief contends he has established judicial bias in the handling of this lawsuit.

Code of Civil Procedure section 170.3, subdivision (d) states:  "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed *only* by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding.  The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification."  (Italics added.)  The statute's use of the word "only" means the "expedited [writ] procedure is the *exclusive means* for reviewing an unsuccessful peremptory challenge filed under section 170.6."  (*People v. Webb* (1993) 6 Cal.4th 494, 522.)

Foster did not file a writ of mandate seeking review of the August 2018 order denying his Code of Civil Procedure section 170.6 challenge.  Consequently, he did not

---

*        See footnote, *ante*, page 1.

43.

comply with the requirements of subdivision (d) of section 170.3 of the Code of Civil Procedure. Because that statutory provision states the order is not appealable, we lack the authority in this appeal to address whether the challenge should have been granted. In other words, Foster "cannot relitigate the [disqualification] issue in the instant appeal." (*People v. Webb*, *supra*, 6 Cal.4th at p. 523.) He should have filed a petition for writ of mandate. Therefore, we conclude the failure to disqualify the trial judge does not present an additional ground for reversing the order dismissing the case or a ground that justifies requiring a different judge consider this matter after it is remanded.

B.    Designation of the Record on Appeal

Foster's supplemental opening brief asserts the clerk of the trial court failed to include the Form 602 that he attached to the documents he filed on February 23, 2018, and March 26, 2018. Those documents responded to the trial court's orders addressing the need for allegations about the exhaustion of remedies. Foster contends the omission of these attachments from the clerk's transcript has violated his right to file an effective appeal. Because this court has allowed Foster to include the omitted documents as attachments to his appellate briefing and because Foster has prevailed in this appeal, the omissions from the clerk's transcript did not prejudice Foster's right to appeal or his right to meaningful access to the courts.

C.    Defendant's Default

Foster's opening brief asserts he served his petition for writ of replevin on the Corcoran State Prison warden's office and its litigation coordinator via a third party and the trial court subsequently rejected his request for default. Foster asserts that in September 2018, the court returned his request for default without filing it or receiving it. He contends this failure constitutes an abuse of discretion that warrants vacating the trial court's order dismissing his civil case.

44.

The issues raised by Foster about proper service of the summons and petition and the entry of default cannot be resolved in his favor on the record before this court. We have not been provided with a copy of the proof or proofs of service or the request for default. Without these documents, we are unable to evaluate the merits of Foster's argument. Consequently, Foster's contentions about service and defendant's subsequent default do not affirmatively demonstrate reversible error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [appellant's burden to demonstrate, based on the record presented, that trial court committed reversible error]; Cal. Const., art. VI, § 13.) Thus, those contentions have not been shown to provide additional grounds for overturning the order dismissing this lawsuit. Furthermore, Foster has not demonstrated he is entitled to an order directing the trial court to file the proofs of service and enter a default.

D.     Costs and Fees

On March 7, 2018, this court filed a petition for writ of mandate from Foster relating to the superior court's handling of Foster's requests for a waiver of fees in this and another pending case. We assigned case No. F077102 to the petition and, on May 10, 2018, issued an order denying the petition.

On February 2, 2021, Foster filed a form FW-006, "Request for Hearing About Court Fee Waiver Order (Superior Court)," with this court requesting an order directing the superior court and the CDCR Trust Office to vacate a fee hold against his trust account for $535 in filing fees. Foster also requests this court take judicial notice of a November 26, 2018 order we filed in case No. F078250, the last sentence of which stated: "Good cause appearing, petitioner's court filing fees and costs in the above entitled action are waived pursuant to Government Code section 68926." In an attachment to the form FW-006, Foster contends he is being forced to pay filing fees already ordered waived and, to correct this injustice, his trust account should be corrected and restored.

45.

First, under California Rules of Court, rule 8.276(a), Foster is the prevailing party and "entitled to costs on appeal." The recoverable costs are listed in California Rules of Court, rule 8.276(d). However, the costs *on appeal* do not include filing fees charged in the superior court. To recover the filing fees and other costs incurred in the superior court, a party must prevail in the action (not just in an appeal). (Code Civ. Proc., § 1032, 1033.5 [allowable items].) Because this matter is being remanded for further proceedings, not for the entry of judgment in favor of Foster, the filing fees charged by the superior court in case No. 18C-0032 cannot be awarded at this point in time. To recover those costs, Foster must prevail in the further proceedings.

Second, this court's order in case No. F078250 stating filing fees and costs had been waived related only to the fees and costs charged *in that appeal*. The order did not address fees and costs incurred in the superior court or incurred in other appeals or writs before this court. Accordingly, that order does not provide a basis for this granting Foster's request to have the superior court filings fees charged in this case vacated.

E.      Rehearing and Early Remittitur

If Foster does not understand the directions provided in this court's disposition, he may request a clarification by filing a petition for rehearing that identifies the portion of the directions that seem unclear and requests a further explanation. (Cal. Rules of Court, rule 8.268 [rehearing petition].)

Once Foster has received this opinion and decides not to seek a rehearing or to petition our Supreme Court for review, he may file a request for early remittitur under California Rules of Court, rule 8.272(c)(1). Ordinarily, remittitur (the document that officially returns the case to the superior court and ends this court's jurisdiction) would be issued 61 days after the opinion is filed. Foster, as the only party to this appeal, can lessen the wait and obtain an early remittitur simply by sending the court a letter stating he agrees or stipulates to early remittitur.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion. Within 10 court days of the issuance of remittitur, the trial court is directed to (1) vacate the October 2018 order granting its motion for judgment on the pleadings and dismissing plaintiff's case and (2) enter a new order granting the motion for judgment on the pleadings with leave to amend. The trial court's new order shall include, without limitation, the following directions:

> Plaintiff shall amend his pleading by filing a new document labeled "FIRST AMENDED PETITION FOR WRIT OF REPLEVIN / MANDATE" that replaces entirely the original petition filed on January 11, 2018. After the first amended petition is filed, the allegations in the original petition will no longer have any force or effect. The only allegations with any force or effect will be those set forth in the first amended petition.

> Plaintiff's first amended petition shall include the allegations relating to the failure to return personal property that were contained in his original petition and shall include additional allegations addressing plaintiff's excuse or excuses for not exhausting the administrative grievance procedure. The excuses alleged shall include, but are not limited to, the unavailability of the grievance procedure due to the misconduct of prison officials. In setting forth the factual details necessary to properly allege the cause of action of conversion and the excuse of unavailability, the first amended petition may include the exhibits attached to the original petition for writ of replevin and additional exhibits to support the allegations addressing the unavailability of the administrative remedies.

The Clerk of the Kings County Superior Court is directed to serve the Fifth Appellate District with a copy of the order issued to comply with the foregoing directions and to include this court among the persons listed on the clerk's certificate of mailing/service for that particular order. Subsequent orders need not be served on, or otherwise sent to, this court.

Plaintiff shall recover his costs on appeal. (See Cal. Rules of Court, rule 8.276(a)(1), (c), (d).)

47.

FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.